## McQuesten *v.* Morgan.

Where land is demised by deed for a term of years, and a rent reserved, payable quarterly, with a proviso that if any quarter's rent remain unpaid for thirty days after the day on which it fell due, the lease shall be void, and the lessor have right to enter, the lease is not forfeited though a quarter's rent remain in arrear for thirty days, unless the rent have been duly demanded.

In such case, to work a forfeiture the rent must be demanded, either on the day when it fell due, or on the last of the thirty days, and a demand on an intermediate day will not be sufficient.

In a replication, which relies on a demand of rent to work a forfeiture of a lease, it is not sufficient to allege that the rent was demanded on the premises, and on the day when it fell due ; it should also state the time of day and the part of the premises when and where the demand was made.

Process, under the statute of landlord and tenant. The questions in the case arose in the pleadings, which are sufficiently stated in the opinion of the court.

*William C. Clarke* and *S. N. Bell*, for the defendant, contended that the replication was insufficient, because it did not allege a due demand of the rent on the day it fell due, on the afternoon of that day, on the land described, and cited *Kidwilly* v. *Brand*, 1 Roll. Ab. 458 ; *Fierca* v. *Proud*, Cro. James

423 ; *Jones* v. *Reed,* 15 N. H. 68 ; *Van Rennselaer* v. *Jewett,* 2 Comst. 141; Co. Lit. 202, a ; Bacon's Ab., Rent, (I) ; *Boyd* v. *Talbot,* 12 Ohio 212 ; *Scott* v. *Scott,* Cro. El. 73 ; *Wood and Chivers' Case,* Leonard 180 ; *Jackson* v. *Kepp,* 3 Wend. 230 ; *McCormick* v. *Connell,* 6 S. & R. 151 ; *McKubin* v. *Whitecroft,* 4 Har. and McHenry; *Conner* v. *Bradley,* 1 Howard U. S. 211 ; *Chandler* v. *Robson,* 2 Car. & Payne 245 ; *Dakin* v. *Cole,* 1 Russ. 170 ; *Wheeldar* v. *Paul,* 3 Car. & Payne 613 ; Co. Lit. 201 ; *Tale* v. *Crowson,* 6 Iredell 65 ; *Fifty Associates* v. *Howland,* 11 Met. 99 ; *Clun's Case,* 10 Co. 129 ; *Dore* v. *Banks,* 4 B. & Ald. 401 ; *Marsh* v. *Birch,* 1 M. & A. 402 ; *Stuyvesant* v. *Davis,* 9 Paige 427.

*Morrison & Fitch,* for the plaintiff.

1. By the terms of the lease the plaintiff was not bound to make any demand of the rent. A quarter's rent was due on the first of June, 1852 ; the tenant had thirty days in which to pay it, and if it remained unpaid after the expiration of thirty days from the time when it fell due, then the lease, and all things therein contained, were determined and void, and then the lessor had the right to enter, and the lessee forfeited all claim under the lease. This we say is the fair and legitimate construction of the lease, and clearly the contract between the parties; and where such appears to be the case the court will not compel a strict compliance with all the formalities of the common law to enforce a forfeiture. Upon the failure of either party to perform the covenant to be by him performed, the lease was not simply voidable but absolutely void.

The payment of the rent was one of the affirmative covenants to be performed on the part of the lessee, and he was bound to perform it or take all the legitimate consequences of a neglect, one of which in this case was a forfeiture of all rights under the lease. The commencement of the suit is equivalent to an actual entry.

2. But if a demand was necessary, the demand made was sufficient. The rent was demanded on the 30th of June, 1852,

within thirty days from the time when it became due. In Co. Lit. 202, a, it is said that "if the reservation of the rent is with a condition that if it shall be behind and unpaid for the space of ten or twenty days after any day of payment, that then the feoffor may enter ; in this case he need not demand the rent on the regular day of payment, but may make his demand at any time before the expiration of the last day thus limited." The same doctrine is laid down in Stearns on Real Actions 27.

PERLEY, C. J. The complaint alleges that on the day when the process was commenced, which was the 21st of July, 1852, the complainant was entitled to the possession of the demanded premises, and that the defendant retained the possession without right; and further states that on the 5th of July, 1852, he gave the defendant notice in writing to quit on the 14th of that month ; but does not state a case which brings the complainant within any provision of the statute of landlord and tenant. The complaint does not show, by direct averment, nor by any necessary implication, that rent was in arrear and remained unpaid after demand, or that the relation of landlord and tenant existed between the parties ; and perhaps, according to the practice which has grown up under the statute, it is not necessary to state any thing more in the complaint than that the plaintiff, in the language of the act, is entitled to the possession of the demanded premises, and that the defendant is in possession without right, after notice in writing to quit. The plea admits that the relation of landlord and tenant existed between the parties, and relies on a demise, by deed from the plaintiff to the defendant, which the plea alleges to be unexpired and undetermined.

Upon oyer of the deed prayed by the plaintiff, it appears that on the 31st of January, 1852, the plaintiff, by deed of that date, demised the land to the defendant, to hold for three years from the first of March, then next, reserving a yearly rent of eighty dollars, payable quarterly, on the first days of June, September, December and March, with a proviso that "if the said yearly rent or any part thereof shall be unpaid for the space of thirty

McQuesten *v.* Morgan.

days after either of the days whereon the same ought to be paid, then this lease, and all things therein contained, shall determine and be void; and then it shall be lawful for the plaintiff and his assigns to enter," &c., with a covenant to pay the rent reserved.

The plaintiff then replied, that a quarter's rent falling due on the first day of June, 1852, was not paid on that day, nor within thirty days thereafter, and has never been paid, though often demanded, " to wit, at Manchester aforesaid, on the premises aforesaid, on the 30th day of June, 1852, whereby the said deed or lease, on the 4th day of July, 1852, had become and was fully expired and terminated;" and on the 5th of July, 1852, the defendant was duly notified in writing to quit and deliver up the premises on the 14th of July, in the same year.

To this replication the defendant demurred, and assigned several causes of demurrer, which, in the view that the court take of the law, are not necessary to be stated.

The plaintiff must rely on the case which he states in his replication. The replication admits the demise pleaded, and goes on the ground that the lease has been forfeited for non-payment of rent, according to the proviso. The first section of the statute which gives this process, provides for terminating a tenancy at will by a written notice. The second, which authorizes a complaint when rent is behind for seven days after demand, can relate only to tenancies at will, because under that section three months' notice is made sufficient in all cases, whether the rent is in arrear or not. The notices to quit, where the rent is behind, and where none is due, belong to the same class of cases; and in all cases that fall under the provisions of this section, the tenancy may be terminated by three months' notice to quit, though the tenant has been guilty of no default. The notices to quit, mentioned in this section, cannot therefore relate to written leases for a longer term than three months. To take the present case for an example, the plaintiff could not by a notice to quit terminate this lease until it expired by lapse of time, or was determined by forfeiture, according to the conditions of the demise.

The statute provides that in case of a written lease a notice in writing to quit in seven days shall be equivalent to an entry for condition broken ; and I am not aware that in case of a demise by writing, a notice to quit has, by the statute, any other effect than to dispense with an actual entry for condition broken.

The notice to quit is, therefore, not available to maintain this process, unless at the time when it was given there had been a termination of the lease by way of forfeiture, or a breach of the condition, which gave the plaintiff a right to terminate the lease by an entry into the premises.

And this brings us to the question whether the replication states matter which in law amounted to a breach of the condition, and gave the plaintiff a right of entry, to avoid the lease, or which terminated the lease *ipso facto*, without any entry ; a question which must be settled on general principles, independent of the statute. Was the lease forfeited and the estate determined without any demand by the mere neglect to pay the rent for thirty days after it fell due ? In other words, was the lessee bound to seek the lessor, and see that the rent was paid within the thirty days, as in the case of any other debt ? or, in order to work the forfeiture, was a formal demand on the land necessary, for the reason that the rent issued out of the land, and the land was the primary and principal debtor, as in ordinary cases of rent reserved on a demise of land ?

If no latitude had been given for payment of the rent after it fell due, it would have been clear on authority that a demand would be necessary to work a forfeiture. *Jones* v. *Reed*, 15 N. H. 68 ; *Stuyvesant* v. *Davis*, 9 Paige 427 ; and we think that the proviso giving the lessee thirty days to pay the rent and save a forfeiture, does not dispense with a demand. In *Jones* v. *Reed*, the lease had a proviso that in case the rent was unpaid for one year after it fell due, it should be lawful for the lessor to terminate the lease. The court held a demand on the premises necessary, to give the right of entry after the lapse of a year. The law leans against the forfeiture of an estate for breach of a condition, and the strict rules of the common law,

applicable to the forfeiture of leases for non-payment of rent, are adopted in this State.  *Jones & a.* v. *Reed,* 15 N. H. 68 ;  *Coon* v. *Brickett,* 2 N. H. 163 ;  *McMurphy* v. *Minot,* 4 N. H. 251.

Forfeitures for non-payment of rent are understood to be waived, unless the lessor makes a legal demand, so as to bring the lessee in default, according to the strict rules of law.  The lease may provide in express terms that the estate shall be forfeited if the rent is not paid, without any entry and though no legal demand of rent is made ; and in such case the agreement of the parties supersedes the general rule of law ; but, in the absence of any such stipulation, a demand is necessary to give a right of entry for non-payment of rent, or to terminate a lease without entry.

Does the replication in this case set out a sufficient demand ? We think not.  Taking the statement in the replication to be a positive averment that the demand was made on the thirtieth day of June, it does not allege that the rent was demanded, either on the day when it fell due, or on the last of the thirty days ; for, by the rule of computation established under our statute, the day when the rent became due would be excluded and not reckoned as one of the thirty ; the thirtieth of June, therefore, would not be the last, but the twenty-ninth of the thirty days allowed the lessee for payment of the rent to save a forfeiture.  Revised Statutes, ch. 1, sec. 45.

In Co. Lit. 202, a, it is said, " If the reservation of rents be at certain feasts, with condition that if it happen the rent be behind by the space of a week after any day of payment, the lease shall be forfeited ; in this case the feoffor needeth not demand it on the feast day, but the uttermost time for demand is a convenient time of the last day of the week."  The language here used is not entirely free from ambiguity.  It is not said that a demand would be good at any time except the day when the rent fell due, or on the last day of the week after ; nor does the language in terms exclude the inference that a demand would be good on an intermediate day.  But Butler, in his note, says, " To save the lease it is not sufficient that the lessee

attend at the proper place on the first day of payment; he must equally attend on the last day." If the lessee can save his lease by attending at the proper place on the first day and the last day, it follows, as a necessary consequence, that a demand made on another day, when he was not bound to attend, cannot be sufficient to work a forfeiture of the lease. The same conclusion is very clearly drawn from *Smith* v. *Bustard,* cited 10 Cowen 129, and from *Crop* v. *Hambleton,* Cro. El. 48.

The law fixes with precision the time and place for a demand of rent, and if the demand is not made then and there, the lessee is allowed to infer that the lessor intends to waive his right to insist on a forfeiture of the estate. This rule of law apprises the lessee of the exact time and place when and where he is to be called on for the rent, and gives him opportunity to be ready to meet the demand and save his estate. If the lessor might come to the premises on any day, and at any time of the day for thirty days; or, as the condition of the lease was in *Jones* v. *Reed,* for a year, and make a sufficient demand, the apparent object of the rule which fixes a time and place for the demand of rent would not be answered. The lessee would have no means of knowing when the lessor would come for the rent. The demand stated in the replication, not having been made on the day when the rent fell due, nor on the last of the thirty days, was not sufficient.

The replication is insufficient for another reason; it does not state at what time of the day, nor on what part of the premises the demand was made. It is said that, when in pleading, the demand is alleged to have been at the house on the premises, and the demand is traversed, the lessor on trial of the issue will be held to prove that the demand was made at the front door of the house, as otherwise it would be a void demand. Co. Lit. 202, a. Even if this could be regarded as an authority that a demand of rent so pleaded would be good on demurrer, it is far from sustaining this replication, which merely alleges that the demand was made on the thirtieth of June, and on the premises. This cannot, by any latitude of construction, amount to an aver-

ment that the rent was demanded at the front door of the house a convenient time before sunset, as it must have been to work a forfeiture of the lease.

We have not considered the special cases of demurrer, being of opinion that the replication is bad in substance.

*Judgment for the defendant on the demurrer.*