## HARRIET E. CAMPBELL *v.* EZEKIEL MCELEVEY ET AL.

### (No. 11,352.)

1. Where a lease has been forfeited by non-payment of rent, subsequent payment of the same rent was not at common law a waiver of the forfeiture.

2. And where, as in Ohio, legal and equitable relief may be afforded in the same proceeding, nothing less will be adjudged a waiver in such cases than that state of facts which in equity would afford the basis of a decree for redemption.

3. Therefore, while under the Ohio system of practice, payment may be a sufficient waiver, the recovery of judgment for the rent in arrear is not. A covenant to erect a building and pay for it, "so that when completed, it and the lessee's rights under the contract, should be entirely free and unincumbered," is not broken if the fact be that the building has been erected, although part of the cost remains unpaid, but there is no lien upon the premises therefor.

4. A mortgagee, of a leasehold will be permitted to redeem the premises from forfeiture, and the sum he pays in such case will be a preferable charge, in redemption account, against the lessee and all claiming under him.

SPECIAL TERM.—On demurrers to answers.

The petition avers that the plaintiff and Samuel J. Broadwell were seized in fee of a lot at the north-west corner of Fourth and Vine streets, thirty feet in front on the former by ninety-nine on the latter; that they entered into a contract with the defendant, McElevey, on the 26th of April,

1856, whereby they agreed to lease him this property for ninety-nine years, renewable for ever, commencing May 1, 1856, at an annual rent of $3,600, payable quarterly, one-half to the plaintiff, the other to Broadwell, the lessee to pay all taxes and assessments; the interest of the lessee to be forfeited, without demand, upon the non-payment of any installment of rent, or of any tax or assessment, or the breach of any of the covenants. The petition further avers that it was expressly agreed that the lease should not be made, nor the contract be binding upon the plaintiff and Broadwell, except upon and after the fulfillment by McElevey of these stipulations.:

*First.* That he should pay the $3,600 per annum, one-half to each, commencing May 1, 1856, in quarterly installments, and all taxes and assessments on and after April 26, 1856.

*Secondly.* That he should within two years erect on the premises a substantial building of brick and stone, worth at least $20,000, and pay therefor, so that when completed, it and McElevey's rights under the contract should be entirely free and unincumbered.

The sum of $15,000 was agreed upon as liquidated damages in case McElevey failed to comply with the contract during the stipulated period of two years.

The petition further avers that McElevey took possession under the contract, but that though he erected a building he did not and never has paid for it, but that there is a sum of $1,648 due from him to mechanics and others who furnished labor or materials which entered into it, and that he has not paid the rent reserved by the contract, but that an installment of $450 thereof became due May 1, 1859, to the plaintiff, which he refuses to pay.

And the petition makes certain sublessees under McElevey, and mortgagees under him, also parties, and prays for the recovery of possession of the premises and damages for its detention.

To this petition Wesley M. Cameron and others, mortgagees, answer that, in May, 1858, McElevey conveyed to

them all his leasehold estate in the premises, by way of mortgage, to secure notes payable in May, 1860, for various sums amounting in all to about $17,000, given for labor and materials employed in the erection of the building; that no part of this indebtedness has been paid, that the mortgage is their only security, that the building is worth $30,000, and that McElevey is insolvent. And they pray that the amount of rent due may be ascertained, and they be allowed to pay the same, and be subrogated to the plaintiff's rights in relation thereto; that on payment thereof the amount may be declared a lien on the leasehold, and that it be sold to pay the same and the mortgage debt.

An amended answer, filed by the same parties, avers that at the November term, 1859, of this court, the plaintiff recovered a personal judgment against McElevey for the same rent in arrear, claimed, as the basis of a rescission of the contract, in the petition.

To both answers, the plaintiff demurs.

*A. H. McGuffey,* and *Mills & Goshorn,* for plaintiff.

*R. M. Corwine,* and *Worthington & Matthews,* for defendants.

HOADLY, J. Proceeding to examine the questions presented by the demurrers in their natural order, the first arises upon the amended answer, and relates to the right of the plaintiff to the relief she seeks.

Although the plaintiff counts not upon a lease, but a contract for a lease, I suppose the rules that govern the rights of the parties are no other than if the lease had been actually executed.

And the proposition for which the defendants contend is, that the recovery of judgment for rent in arrear waives any forfeiture created by the non-payment of the same.

The rule of law governing this subject may be stated thus. Any act done by the lesser after and with a knowledge of

the forfeiture, which recognizes or affirms the tenancy as subsisting, waives the forfeiture.

But a material distinction, not to be overlooked, is, that it must be an act which affirms the tenancy as subsisting after the forfeiture; not an act, though done subsequently, which merely recognizes the tenancy as subsisting before or until the forfeiture. Hence it has always been held that a subsequent distress waives a forfeiture, for a landlord can only distrain while the tenancy subsists. The distraint, therefore, affirms that, at its date, the relation of landlord and tenant exists, for without that there can be no distraint. Lord Coke says (Pennant's Case, 3 Rep. 64): "If the lessor distrains for the same rent for which the demand was made, he hath thereby also affirmed the lease, for his distress for the rent received; for after the lease determined, he can not distrain for the rent." See also *Zouch* v. *Willingale,* 1 H. Black. 311.

So, too, the suing out of an Assise of Novel Disseizin for a rent waives any previous forfeiture, for by this proceeding the demandant affirms that there is a subsisting rent of which he has been disseized. Co. Litt. 211 b.

So, too, if a landlord accept rent, due at a day after the forfeiture accrued, this is a waiver because, as Lord Coke says, (Co. Litt. 211 b.) "he thereby affirmeth the lease to have a continuance."

And to this effect are many cases: *Browning* v. *Beston,* Plowden, 133; *Harvey* v. *Oswald,* Cro. Eliz. 553, 572; *Whitchcot* v. *Fox,* Cro. James, 398; *Fox* v. *Swann,* Styles, 483; *Kinnersley* v. *Orpe,* Douglas, 57; *Goodright* v. *Davids,* Cowper, 803; *Roe, Gregson* v. *Harrison,* 2 Term, 425; *Goodright* v. *Cordwent,* 6 Term, 219; *Arnsby* v. *Woodward,* 6 Barn. & Cres. 519; *Doe, Gatehouse* v. *Rees,* 4 Bing. N. C. 384; *Collins* v. *Canty,* 6 Cush. 415; *Conway* v. *Starkweather,* 1 Denio, 115; *Camp* v. *Pulver,* 5 Barb. 97; *Clarke* v. *Cummings,* 5 Barb. 359; *Stuyvesant* v. *Davis,* 9 Paige, 427; *Newman* v. *Rutter,* 8 Watts, 55; *Boggs* v. *Black,* 1 Binney, 333; *Doe, Richburg* v. *Bartley,* 1 Busbee's Law, 418.

37

To this end the Court of King's Bench held in *Doe, Cheny* v. *Batten,* Cowper, 243, that the rent accruing after a forfeiture, must be shown to have been taken *eo nomine,* and with a knowledge of the forfeiture. If received in the shape of damages for the detention of the land, it is no more than what could be recovered as mesne profits, and therefore not waived, and they held that it was a question of intent, and for the jury in each case to say how the money was received.

Lord Mansfield, in the course of his opinion, refers with approval to a case tried before Mr. Justice Gould, where it was held that the landlord might, at the same time, bring ejectment for the land, and sue for the use and occupation subsequent to the forfeiture.

*Doe, Cheny* v. *Batten* was approved and followed by the Spreme Court of Virginia in *Jones' Devisees* v. *Roberts,* 3 Hen. and Munf. 436.

In *Goodright* v. *Cordwent,* cited above, Lord Kenyon says: "If the defendant had paid, and the lessor of the plaintiff had received, the money as a satisfaction for the injury done by the defendant in continuing on the plaintiff's land as a trespasser, then the plaintiff might have recovered in ejectment. But if it were paid *eo nomine* as rent, and received as such, and the jury have found that it was so, I can not assent to the doctrine laid down in the cases cited, that the receipt of rent accruing after the expiration of the notice to quit is not a waiver of it; for according to that doctrine, the same person might stand in the relation of tenant and trespasser to the landlord at the same time."

This last sentence of Lord Kenyon's furnishes a key to the law on this subject. The moment the landlord seeks to avail himself of a forfeiture, he puts the tenant in the attitude of a trespasser from the date of forfeiture, and can only recover for the subsequent occupation of the land by the tenant until ejected in the form of mesne profits or damages. *Stuyvesant* v. *Davis,* 9 Paige, 427. The moment he seeks to recover as for rent, he affirms that the lease exists, notwith-

standing the forfeiture. And even a demand for subsequently accruing rent is therefore a sufficient waiver. Parke, Baron, in *Doe, Nash* v. *Birch*, 1 Mees. & Welsby, 402.

But it is obvious that as to rent which accrued before the forfeiture, and up to the date of the breach of covenant, which gives the right of re-entry, a very different rule applies. For to sue for that rent, or even to receive it, only affirms that the lease had continuance until the date of the breach of covenant. The landlord may well, therefore, treat the tenant as tenant to that date, and sue him in debt or covenant for the rent then accruing, and as a trespasser subsequently.

The law is thus stated in Fitzherbert's Natura Brevium, 120: "If a man lease lands for years rendering rent, and for default of payment that he shall re-enter; if he do re-enter in the land for non-payment of the rent, yet he may have an action of debt for the rent for which he doth re-enter, and in the writ shall recover the rent for which he re-entered."

So in Pennant's case, Lord Coke, after stating that the landlord by accepting rent due at a day after, dispenses with the condition, adds: "But, although in such a case he accepts the rent (due at the day for which the demand was made), yet he may re-enter, for as well before as after his re-entry, he may have an action of debt for the rent on the contract between the lessor and lessee."

In *Marsh* v. *Curteys*, Cro. Eliz. 528, Anderson and Beaumond, JJ., argued thus, Walmsley, J., dissenting: "But the acceptance of rent due before his title of entry is no bar, for it being then due he might have debt for it, and it doth not show any election in him to continue the lease."

*Hartshorne* v. *Watson*, 4 Bing. New Cases, 178, was an action of covenant on an indenture for six installments of rent of £25 each. The lease provided that for rent in arrear the landlard might enter and hold the premises " as if the indenture had never been made." The defendant

pleaded that the plaintiff had re-entered. Tindal, C. J., says: "The proper construction of this condition is, that from the time of re-entry the lessor shall have the land as if the indenture had not been made; for the period previous to re-entry the lessee or assignee had it subject to the indenture. It would be a singular construction to hold that to an action for rent, on an instrument under seal, the lessee or assignee may plead, not payment, but that the lessor entered for non-payment; in other words, may deprive the lessor of his rent because he declines to submit to any further loss."

The case of *Doe, dem. Morecraft* v. *Meux*, 1 Carr. and Payne, 346, is cited in Taylor on Landlord and Tenant, 497, and 2 Harrison's Digest, 3604, to the proposition that the acceptance of rent, after ejectment brought, is no waiver of a forfeiture; but the very badly executed abridgement of those reports embraced in the "English Common Law Reports," does not contain this case at all, and there is no copy of the original English edition of the volume in the city. The same case, perhaps, came again before the courts and is reported in 4 Barn. and Cres. 606, but does not seem to have involved this question.

In *Jackson* v. *Allen*, 3 Cowen, 230, the Supreme Court of New York says: "In order to render the receipt of rent a waiver, it is necessary that the rent should have accrued as well as have been received subsequent to the forfeiture. It proceeds upon the principle that the lessor, by receiving the rent, affirms the lease to have continuance, as Lord Coke expresses it; but that can only relate to the time when the rent fell due, and not to the time of its payment."

In *Jackson* v. *Sheldon*, 5 Cowen, 448, the same court, after holding that a distress waives a previous forfeiture, proceed thus: "It is not like the case of receiving rent after a forfeiture, which accrued previously, and may be received without a waiver because the landlord can recover it on the covenant to pay; but it is like the receipt of rent as such, accrued subsequent to and received after the forfeiture,

which implies an affirmance of the lease, inasmuch as rent can not accrue on an estate that is forfeited. The landlord, it is true, may recover damages in an action for the mesne profits after the re-entry, by reason of the forfeiture is perfected, but in that case the defendant is considered a trespasser." P. 456.

The same court, in *Bleecker* v. *Smith*, 13 Wend. 530, again examined the subject in the case of a forfeiture, claimed from the breach of a covenant to keep up an orchard. The court says: "The receipt of rent which accrued before the forfeiture is no waiver, it only admits that the lease was in force when the rent became due. To operate as a waiver the rent must have accrued subsequent to the act which works a forfeiture." P. 534.

In *Hunter* v. *Osterhoudt*, 11 Barb. 33, a lease was subject to forfeiture if the rent remained in arrear four months. The court, after adjudging that the payments proved, appointed legally, only discharged rent due before the forfeiture, say: "It is only where rent is paid, which accrued after the forfeiture, that such payment is considered an affirmance of the lease and a waiver of the forfeiture. Payment of rent which accrued prior to the right of entry is not a waiver of the forfeiture." P. 35.

There is but a single case to the contrary, *Coon* v. *Brickett*, 2 New Hamp. 163. This was a case in which the lessor, *after re-entry*, accepted the rent on account of the non-payment for which the lease had been forfeited. Remaining in possession he brought an action of trespass against the lessee for certain garden vegetables which the latter removed from the premises. The court held that the receipts of rent waived the forfeiture and terminated the landlord's right of possession. Judge Woodbury, in pronouncing the opinion, says: "It is well settled that after a knowledge of condition broken, and *before* a re-entry, an acceptance of the rent in arrear is a waiver of the forfeiture, and an admission that the tenancy is still to continue." To this proposition he cites Pennant's case, *Harvey* v. *Oswald*, Cro. Eliz. 553, 572;

*Gregson* v. *Harrison*, 2 Term, 425; *Browning* v. *Beston*, Plowd. ·133; *Kinnersly* v. *Orpe*, Doug. 57, and 18 Johns. 183. ' Of these Pennant's case is directly to the contrary, as has already been shown, and the others are cases of rent *accrued* as well as paid after forfeiture.   They do, it is perhaps true, sustain the distinguished judge in the view to which his mind seems to have been especially directed, that in determining whether a forfeiture has been waived, the question whether the rent *was accepted* before or after reentry is immaterial, but in none of these cases was the receipt of rent which accrued before the forfeiture held to be a waiver.

The reason given by Judge Woodbury for the rule he contends for is this: " It is unjust that the lessor should receive both the penalty and the rent; or, in other words, should accept the performance of the condition, and retain also the forfeiture for its non-performance."

But the courts of ' New Hampshire have chancery jurisdiction, and this reasoning loses sight of the distinction between law and equity.

The condition was to perform at the time.   To pay afterward is, *in law,* no performance.   *In equity,* where the forfeiture is a mere security for the payment of the rent, relief will be granted by allowing a subsequent redemption.   Not upon the theory that the condition is performed, however, but with the idea that as time is not of the essence of the contract, that which is equivalent to performance will be accepted in its stead.

This examination of authorities warrants the conclusion that notwithstanding the very high authority of Judge Woodbury, the rule at common law is well settled that a forfeiture is not waived by payment of rent which accrued before condition broken, much less by an action on the indenture of lease to recover it, but that the lessor might well maintain both his ejectment and his action of debt, or covenant for the rent accrued until forfeiture, and recover damages by way of mesne profits for a subsequent possession.

Against this rule courts of equity interfered by permitting a redemption wherever adequate compensation could be made to the lessor, as in all cases of forfeitures by reason of non-payment of rent, where the conclusion is fairly derivable that the clause of re-entry is intended as a mere security, and where, therefore, payment of the rent with interest would be a just equivalent.

In Ohio we have now no distinction between legal and equitable remedies. It is not rational, therefore, any longer to uphold the common law rule with one hand, and upset it with the other; to say that a payment made after condition broken of rent accrued before, is no waiver, but to compel the landlord to receive the same sum by way of redemption; thus giving one effect to a willing, another to an unwilling receipt.

The true rule would seem to be to hold that, and only that, in such cases, to be a waiver which equity would require upon granting a redemption.

Therefore, if, by the landlord's consent, all is done by the tenant which the chancellor would require in case of redemption, it is a just conclusion that the forfeiture is waived.

But less than this will not answer. It has never been held that equity would require a lessor to accept less than payment; to take, for instance, a confession of judgment in lieu of that for which the forfeiture is a security. The action of courts of chancery is not obtained unless the lessor receives an equivalent to performance.

The obtaining of a judgment against the lessee is not a waiver of the forfeiture at common law; even payment as we have seen falls short of that; nor is it the foundation of a redemption in equity, and should not be held a waiver, therefore, either at law or equity.

The demurrer to the amended answer is well taken, and must be sustained.

Before leaving this part of the case it is proper to allude to the decision in *Owens* v. *Hickman*, 3 Weekly Law Gazette, 349, which was much relied on, by counsel for defend-

ants, in argument. That case only involved the question whether the permission given by the code to recover, in one action, the possession of real property and damages for its detention, a landlord to unite with a count for possession ; one, upon the indenture of lease, for rent accrued before forfeiture. And it was properly held that it did not, the word " damages" as used in the code referring to mesne profits, not to the liability upon the covenant of the lease, which is an obligation of a totally different nature. The case did not require the examination of the question presented here. If it had I can not doubt, notwithstanding some expressions apparently to contrary, that the learned judge would have aimed at the same conclusion to which I have come.

The demurrer to the original answer may be disposed of much more briefly.

To this answer, as indeed also to the amended answer, it is first objected that the defense is not complete, being only to that part of the petition which seeks a rescission of the contract because of non-payment of the rent, leaving unanswered the claim that the rights of McElevey are forfeited by reason of his failing to pay for the building he erected.

The petition avers, not that at the end of two years there was any lien or incumbrance on the building, or on McElevey's rights under the contract, in favor of mechanics who did work and furnished materials, but simply that McElevey then was and is now in debt to such parties. The contract requires him to pay for the building, "*so that* when completed it and his rights under the contract should be entirely free and unincumbered." In other words, so that when the lease is to be executed there shall be nothing in the way of its execution, no mortgages, mechanics' liens, or other incumbrances on the building, or on McElevey's rights under the contract. The petition does not show that there were any.

For if the object of this clause was to provide for an unembarrassed tenant, by way of securing more certain payment of rent, it does not go far enough. In that case he

should have been required to be out of debt altogether. The construction sought to be given this clause permits him to be insolvent in his general business, provided he pays for the building, and thus defeats itself.

But the original answer is open to a serious objection in this, that it seeks to clog the redemption of the forfeiture which it asks with conditions. The defendant's mortgage debt is not yet due; upon that they are not now entitled to an order for the sale of the leasehold. They offer to pay up the rent in arrear, provided they can be subrogated to the plaintiff's rights, can have their payment of rent made a lien on the premises, and they ask an immediate sale of the leasehold.

If these mortgagees redeem, the money they have to pay is undoubtedly a charge against the leasehold preferable to the rights of McElevey or any one claiming under him. *Neale* v. *Hagthrop*, 3 Bland, 590.

It is a payment to save the estate and inures to the benefit of the lessee, and all who claim under or through him. Therefore it becomes the first lien, junior only to the right of the lessor. It can not be made superior to her rights to subsequently accruing rent, nor can the defendants be subrogated to her right to dispossess the occupants of the building. Nor is it a lien for which a sale will be ordered. It is rather a charge in redemption account, which McElevey and those claiming through him must pay, in settlement with these defendants, and which will be allowed out of the proceeds of sale when made, but to defray which the leasehold will not be sold in the first instance.

The demurrer to the original answer will therefore be sustained, but with leave to amend within ten days, so as to bring into court the rent in arrear and unconditionally redeem. Otherwise there must be judgment for the plaintiff.